JUAN VÁZQUEZ LUGO, Plaintiff and Appellee, *v.* HERACLIO GIRÓN, Defendant and Appellant.

No. 6803. Argued January 21, 1936.—Decided November 10, 1936.

*Leopoldo Tormes García* and *C. Coll Cuchí* for appellant. *Erasto Arjona Siaca* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

██ Pietri & Co. were cultivators of fruit and for the purposes of this case, it may be said, they made a specialty of growing oranges. One of the fundamental questions in the case is with respect to the crop of 1930. The plaintiff, Vázquez, admitting that the defendant Girón was the only one who dealt with Pietri & Co. in the purchase of their fruit during the progress of that year, alleged and introduced evidence to prove that Girón had agreed to divide his profits in the fruit with the said Vázquez and with Tiburcio Llorens acting together. Vázquez and Llorens were partners and had agreed to divide the 50 per cent of the profits that they were to receive from Girón. Vázquez also alleged and introduced evidence tending to prove that Llorens assigned and transferred his 25 per cent to Vázquez. Girón answered and raised various defenses. The case went to trial and the District Court of Ponce decided in favor of Vázquez for the whole amount prayed and rendered judgment accordingly.

For us, one of the principal questions raised was whether Vázquez ever had any direct dealings with Pietri & Co. He said that he did, and the evidence tended strongly to show that he and his sons, both in 1930 and before, went to the property of the Pietris, packed the fruit, and got it ready for market. Two witnesses for the defendant, related to the firm of Pietri & Co., testified that Vázquez had no relation with Pietri.

Then there was a question of whether Vázquez and Llorens or either of them gave any consideration for their participation in the profits from the crop of 1930. The witnesses of the plaintiff said that Vázquez and Llorens had previously the exclusive right to buy of Pietri. The two of them made

a contract with Girón by which they turned over to him whatever rights they had with Pietri. The appellee, not necessarily abandoning the theory of an exclusive right, maintained that he and Llorens sold whatever rights they had to Girón. We are convinced that, whether there was an exclusive right or not, Vázquez and Llorens and particularly Llorens were continuously buying fruit of Pietri. Girón, so the court had a right to believe, came perhaps to Llorens rather than to Vázquez, to buy the rights that Vázquez and Llorens had with the Pietris. The evidence tended to show that the three of them had a conference at which the agreement about the division of profits was consummated. We are of the opinion that whether Vázquez or Llorens had an exclusive right or not, Llorens especially had a nexus or relation with the Pietris that Girón was anxious to acquire and did acquire. By reason of this conference Llorens and Vázquez yielded up any possibility that they might have had, with the Pietris, of buying the fruit produced in 1930. The parties agreed among themselves that Girón probably could obtain better terms from the Pietris, so the testimony ran. The court had a right to believe that Vázquez and Llorens jointly made a contract with Girón for the division of profits in part of the crop grown by the Pietris in 1930. The evidence of the plaintiff was clear to the effect that after Girón took hold, the two sons of Vázquez continued to take part in if not to do the packing.

There was a very determined attack on the testimony of Llorens. On the whole the court had a right to consider him as a credible and independent witness. Nevertheless, at a trial a few days before the instant trial Llorens testified that he had never assigned or agreed to assign his part of the profits to Vázquez. In the present trial he gave testimony to the contrary, said that he had made a mistake in the previous trial and that Vázquez had convinced him that the assignment had been made. He gave other testimony tending to support the case of the plaintiff and the appellant

insists that he was not worthy of belief. This was a matter for the court below and we are not convinced that the court ought to have discredited the testimony of Llorens.

The main objection to the finding of the court with regard to the profits received by the defendant for the sale of the oranges, which amounted to $3,078.72, was that instead of bringing evidence from the actual purchasers of said fruit to prove the actual price obtained, the court relied on the testimony of the plaintiff's son as to the price at which the oranges were sold to the defendant, and also relied on the testimony of this same son as an expert witness concerning the probable price obtained on the market from an average of the range of prices during the time that the oranges were sold. The court was justified in believing that the profits might have been more than $1,000 from the testimony of the defendant himself on the stand and from the written evidence which defendant attempted to explain. We may say the main objection is lack of a foundation to show inability to present the best evidence. There was other evidence which sustained the finding of the court, and the defendant failed to attack the amount of profits by bringing in the actual bills of sale, as he might have readily done. We think besides, the evidence admitted was harmless.

We shall consider the amount of the damages as found by the court. A note written by Girón on the back of an envelope indicated that the amount due Vázquez might be settled for $1,000. On the witness stand, in referring to this $1,000, Girón, while suggesting that the amount might be a little less, admitted that it might be a little more.

The son of Vázquez took the stand. He gave testimony tending to show that a certain number of boxes of oranges were shipped and that the profits therefrom amounted to over $3,000. He traces to Girón the origin of certain documents showing this result. It would follow that as between Girón and Llorens the share of Llorens would amount to $1,500 or more.

Some of this is not as clear as it might be, but there was enough in the record to justify the court in arriving at its conclusion that the amount of profits due Vázquez by reason of his arrangements with Llorens and the latter's arrangements with Girón was $1,539.36.

Directly or indirectly this disposes of all the assignments of error and the judgment should be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Travieso took no part in the decision of this case.